UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT ROSENBALM, | No. C 07-4197 SI (pr) |
| Petitioner, | **ORDER OF DISMISSAL** |
| v. | |
| ED FOULK,<br>CEO of Napa State Hospital, | |
| Respondent. | |

## INTRODUCTION

Vincent Rosenbalm, incarcerated at Napa State Hospital ("NSH"), has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Having considered the petition and dozens of other filings by Rosenbalm as well as the status report from respondent, the court determines that this action must be dismissed. The dismissal will be without prejudice to Rosenbalm filing a new petition to challenge the commitment order after he concludes his state court challenges and without prejudice to Rosenbalm filing a habeas petition challenging his criminal conviction if he is ever convicted. The dismissal also will be without prejudice to Rosenbalm challenging his conditions of confinement in a civil rights action.

## BACKGROUND

A. <u>Rosenbalm's Criminal Case And Commitment</u>

The court conducted an initial review of this action pursuant to 28 U.S.C. § 2243 and Rule 4 of the Rules Governing Section 2254 Cases ("Rule 4"), and ordered respondent to file a

status report to provide certain information to aid the court in its understanding of petitioner's situation. <u>See</u> Order For Status Report From Respondent, p. 2. Respondent provided information that illuminates the situation. As described in more detail below, Rosenbalm is currently in custody in a state mental hospital pursuant to a commitment order under California Penal Code § 1370 issued in his state court criminal case. The commitment will last until he regains competency or three years passes, whichever occurs first. He apparently is being involuntarily medicated with an anti-psychotic medication.

<u>Status of Criminal Case</u>: On October 20, 2006, the Mendocino County District Attorney filed a complaint charging Rosenbalm with making a criminal threat, a felony, <u>see</u> Cal. Penal Code § 422. That case is Mendocino County Superior Court Case No. MCUK-CRCR-06-74005. On October 29, 2006, defense counsel declared doubt as to Rosenbalm's mental competency to stand trial. <u>See</u> Cal. Penal Code § 1368. The court suspended proceedings in the criminal case pending receipt of reports from two doctors who were to examine Rosenbalm and submit their findings to the court. On November 27, 2006, the court declared Rosenbalm not mentally competent to proceed with trial, and ordered the criminal proceedings to remain suspended. On December 26, 2006, the court ordered Rosenbalm committed to NSH for a maximum commitment time of three years, <u>see</u> Cal. Penal Code § 1370. Resp. Exh. A, CT 27. Rosenbalm appealed from that decision. His appeal is currently pending in the California Court of Appeal. <u>See</u> Resp. Exh. B.

<u>Authority For Current Placement At NSH</u>: Rosenbalm is currently at NSH pursuant to the December 26, 2006 commitment order. Rosenbalm has had mental status examinations since his commitment. His most recent mental examination was on September 25, 2007, at which time the hospital staff submitted a report opining that Rosenbalm was not competent and recommending his continued retention at NSH for continued treatment.

<u>Involuntary Medication</u>: An order issued in Rosenbalm's criminal case on April 13, 2007, authorized NSH to administer medically appropriate anti-psychotic medications to Rosenbalm. As of September 25, 2007, hospital staff reported that Rosenbalm was receiving Risperidal Consta 50mg injections every two weeks. Resp. Exh. D. Risperidal, or risperidone, is a second

generation antipsychotic medication, according to the NSH February 20, 2007 request for authorization to medicate Rosenbalm. Resp. Exh. E.

B.      The Current Action

In the petition filed in this action, Rosenbalm sought to challenge the commitment order of December 16, 2006, as well as various other matters related to his criminal case in Mendocino County Superior Court. Petition, pp. 6, 7.   He also sought to challenge a February 2004 arrest by the Mendocino County Sheriff, for which he was not arraigned in 72 hours but was released after 7 days. Petition, p. 6.

Since filing the petition, Rosenbalm has filed over 75 other documents (averaging more than two filings per week) in this action.  His filings include dozens of letters, a motion for a mediator, several motions for injunctions, a motion for a temporary restraining order, a motion for an in camera hearing, a motion for summary judgment, and motions to appoint counsel. Rosenbalm also has left numerous lengthy voice-mail messages for various court staff members.

The numerous filings are extremely repetitive in terms of subject matter.  Most of Rosenbalm's efforts have been devoted to complaining about his arrest and the criminal case pending against him. See, e.g., Docket #s 8-10, 12, 13, 15-18, 21, 22, 24-26, 30, 34, 36, 39, 41, 45-49, 51, 53, 55-59, 62, 64-69, 71, 74-77, 79, 80.  He complains especially that he has been denied counsel; two recurring themes are that the state court will not appoint new counsel to replace the attorneys he has fired and that his attorneys failed to personally visit with him. See, e.g., Docket #s 25, 31, 32, 35, 41, 46, 49, 59, 62, 63, 65, 66, 69, 76, 77, 81.  He repeatedly requests that this court appoint counsel to replace the ones he has fired. See, e.g., Docket #s 22, 31, 35, 41, 53, 62, 63, 65, 77, 81.  He expresses annoyance at the slow response times to his state habeas petitions and other documents he has filed in state court. See, e.g., Docket #s 13-15, 19, 30, 48, 75.

Rosenbalm also complains about problems he had before he was arrested in October 2006. He complains about: prior illegal arrests and incarcerations (see, e.g., Docket #s 19, 25, 41, 42, 47, 51, 73); a wage dispute with a golf course and union (see, e.g., Docket #s 8, 41, 47);

prepaid legal services he did not receive (see, e.g., Docket #s 47, 64, 65, 71, 79); his ex-wife (see, e.g., Docket #s 65, 74); the local animal control office that took his dogs (see, e.g., Docket #s 41, 79); a realtor's activities as his landlord (see, e.g., Docket #s 8, 26, 47, 65, 71, 79); and the police department's refusal to take reports from him (see, e.g., Docket #s 8, 24, 65, 79).

Rosenbalm also asserts many complaints about the conditions of confinement at the NSH and the Mendocino county jail. See, e.g., Docket #s 25, 55, 56, 63, 70. Among other things, he complains that he: was refused breakfast service one morning when he was sent to court (docket # 11, 29); was denied mail service (see, e.g., Docket #s 33, 34, 38, 42, 43, 46, 57, 62, 65, 72, 78); was denied access to a synagogue (see, e.g., Docket #s 29, 33, 38, 42-44, 47, 51); was denied access to a typewriter and photocopier (see, e.g., Docket #s 33, 34, 62); was subjected to illegal drugging (see, e.g., Docket #s 39, 51); and was denied adequate medical and dental care (see, e.g., Docket #s 42, 63, 65, 70, 78).

Rosenbalm also complains that the NSH director and staff are impeding his access to this court. He complains that he has been denied access to the Pacer program, allegedly in violation of Judge Walker's May 11, 2007 order. See, e.g., Docket #s 8, 16, 21, 27, 28, 31, 37, 55-57, 62, 65, 78. He complains that he has been denied access to the court and to trust account forms. See, e.g., Docket #s 5, 7, 10, 12, 13, 28, 38, 49, 55-58, 68, 75, 78.

He has filed numerous "criminal complaint" forms, in which he purports to be charging people with crimes on behalf of the United States. See, e.g., Docket #s 8, 33, 34, 41-43, 46-49. He also has filed "information referral" forms used to report suspected tax evaders, although it cannot be determined whether these also have been sent to the IRS. See, e.g., Docket # 47.

One of the reasons for the breadth of topics mentioned by Rosenbalm in this action may be that his ability to file civil rights actions in this court is curtailed. Last year, the court determined that Rosenbalm is subject to 28 U.S.C. § 1915(g)'s provision that disallows pauper status to certain frequent filers. See Order of Dismissal filed June 1, 2007, in In Re. Vincent Rosenbalm, C 06-7801 SI, et al. As a result, he may not file a civil action in forma pauperis and must pay the full filing fee at the time he files the action. He apparently is trying to circumvent that ruling by asserting civil rights-type claims within a habeas action for which he has paid the

4

$5.00 filing fee.

## DISCUSSION

Principles of comity and federalism require that this court abstain and not entertain a pre-sentence habeas challenge unless the petitioner shows that: (1) he has exhausted available state judicial remedies, and (2) "special circumstances" warrant federal intervention. Carden v. Montana, 626 F.2d 82, 83-84 (9th Cir. 1980); see Hartley v. Neely, 701 F.2d 780, 781 (9th Cir. 1983) (pretrial petition raising colorable claim of double jeopardy could be considered after petitioner exhausted state court remedies); Finetti v. Harris, 609 F.2d 594, 597-98 (2d Cir. 1979) (state prisoner seeking to challenge in federal court the constitutionality of the denial of state bail must do so by way of a petition for writ of habeas corpus and must first exhaust state remedies by presenting his claims to the highest state court available for review); see generally Younger v. Harris, 401 U.S. 37, 43-54 (1971) (under principles of comity and federalism, a federal court should not interfere with ongoing state criminal proceedings by granting injunctive or declaratory relief absent extraordinary circumstances).

With the exception of the small part mentioned in the next paragraph, all of Rosenbalm's challenges to the state court criminal case against him must be dismissed as premature. He has not shown any special circumstances warranting federal intervention in a state criminal trial as to any but that limited part discussed in the next paragraph. Thus, for example, his claims about ineffective assistance of counsel, conflicts with counsel, lack of discovery, slow responses to his motions and petitions in state court are routine claims that will not be entertained in a federal habeas action unless and until Rosenbalm is convicted and exhausts state court remedies as to such claims.

One specific part of the bundle of problems Rosenbalm offers up to the court appears to present a special circumstance that might warrant habeas consideration before the criminal trial and appeal concludes. That specific part is the order committing Rosenbalm to the state mental hospital. Waiting for the conclusion of all state criminal proceedings and appeals therefrom might deprive Rosenbalm of a meaningful opportunity to have federal habeas review of the

commitment order. Being involuntarily placed in a mental hospital if one does not belong there might be a case of an irreparable injury that would make federal habeas relief possible notwithstanding that the order has been issued in connection with ongoing state criminal proceedings. Determining that the commitment order can be challenged before the conviction occurs does not mean that this case can go forward: there is an exhaustion problem that requires the dismissal of this petition.

Any claim about the commitment order is premature because Rosenbalm has not exhausted his state court remedies yet, as he must, before this court may entertain a petition challenging the order committing him to the mental hospital. He currently has an appeal pending in the California Court of Appeal. He must wait for a decision from that court and then present his claims to the California Supreme Court to exhaust state court remedies before he may file a new federal habeas petition. Not only must he go to the state's highest court, he must give that court a fair opportunity to rule on the merits of his federal constitutional claims. Rosenbalm has not identified with any clarity the federal constitutional claim(s) he wants to make with regard to the commitment order. It is not enough for him to say he thinks the commitment order is wrong; he must identify every federal constitutional right that has been violated by the issuance of the commitment order and must provide a sufficient description of the facts in support of his claims so that this court and respondent will be able to understand it

Rosenbalm's complaints about the conditions of confinement at NSH and the county jail are dismissed without prejudice to him asserting those claims in a civil rights action. A federal habeas action is not the correct vehicle to assert claims about the conditions of one's confinement.

The court notes that Rosenbalm should refrain from asserting that he has been ordered to have access to the Pacer program. The May 11, 2007 order by Judge Walker plainly does not order that Rosenbalm be given access to the Pacer program. He may continue to file documents by mailing them to the court.

**CONCLUSION**

The action is dismissed without prejudice to Rosenbalm filing a new petition for writ of habeas corpus after he exhausts state court remedies as to his federal constitutional claims regarding the commitment order. All other challenges to the criminal proceedings must wait until Rosenbalm is convicted; he may not challenge the state court criminal proceedings against him until he is convicted and then must exhaust state court remedies before filing a federal petition for writ of habeas corpus. This dismissal also is without prejudice to Rosenbalm challenging the conditions of confinement at the county jail and at Napa State Hospital in a civil rights action.

Respondent's motion to file medical records under seal is GRANTED. (Docket # 52.)

In light of the dismissal of this action, the court DENIES as moot Rosenbalm's motions for a mediator, for injunctive relief, for a temporary restraining order, for an in camera hearing, for summary judgment, and for appointment of counsel. (Docket #s 30, 39, 44, 46, 50, 54, 55, 62, 77, and 81.)

The clerk shall close the file.

IT IS SO ORDERED.

DATED: April 3, 2008

SUSAN ILLSTON
United States District Judge